

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG 19 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

TRUSTEES OF THE GLAZIERS,
ARCHITECTURAL METAL AND GLASS
WORKERS LOCAL UNION NO. 27
WELFARE AND PENSION FUNDS,

Plaintiffs,

v.

THE GLASS HOUSE, INC., an
Illinois Corporation,

Defendant.

Case No. 04 C 5031

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiffs are fiduciaries and plan sponsors of the Glaziers Architectural Metal and Glass Workers Local Union No. 27 (the "Union") Welfare Fund and Pension Fund (the "Funds"). They bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., to recover delinquent Funds' contributions that Defendant, The Glass House, Inc. ("Glass House"), allegedly owes under the parties' collective bargaining agreement (the "CBA"). Before the Court are Plaintiffs' and Defendant's cross motions for summary judgment.

### I. BACKGROUND

In 1999, Glass House's President Steven Holwell discussed Union membership with the Union's business agent, Michael O'Donnell, and its business manager, Leonard Mathias. Holwell

entered into the CBA with the Union on August 2, 1999. After signing the CBA, Glass House employed both Union and non-Union workers to perform glazing work on residential and commercial projects within the CBA's trade and geographic jurisdictions. (See CBA, arts. 6 & 8).

The CBA's "Union Recognition" Clause outlines the parties' relationship:

> The Employer recognizes the Union as the sole and exclusive collective bargaining representative of all Glazier and Apprentice Glazier employees (performing work hereinafter described in Article 6 and within the geographical area covered in Article 8 of this Agreement) for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, employment practices, standards of workmanship, safety practices and other conditions of employment.

(*Id.*, Art. 1 § 1). Additionally, the CBA explicitly binds Glass House to the companion "Declaration of Trust," which establishes the Union's Funds. (*Id.*, Art. 18 § 3, ¶ 1e ("The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.")). Under the Declaration of Trust, Defendant must make periodic contributions to the Funds on behalf of specified employees and submit all necessary books and records to Plaintiff's accountant to conduct compliance audits. (*Id.*, Art. 18 § 3, ¶ 3).

The Union employed Richard Wolf and Company (the "Firm") to conduct the compliance audits. The Firm audited Glass House for

the glazing work performed by its employees on three separate occasions -- August 2, 1999 through September 20, 2001; October 1, 2001 through May 31, 2003; and June 1, 2003 through August 31, 2004. During the audit process, the Firm first confirmed the accuracy of the hours reported for Glass House employees. (Pl. 56.1(b) Resp., ¶ 16). Next, the Firm assessed the hours and determined whether there were additional employee hours for which Glass House still needed to make contributions. (*Id.*) The Firm addressed their questions concerning Glass House record keeping to Glass House management before asking the Union. In the three audit reports of Glass House, the Firm excluded contributions for any employee hours if Glass House identified the hours as "in-shop" or "administrative." The present dispute concerns $50,060.26 in outstanding Funds' contributions for the period between June 1, 2003 and August 31, 2004.

## II. **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c). In deciding a motion for summary judgment, the court "review[s] the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v.*

*Nat'l-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *See LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997). When the opposing party cannot demonstrate a genuine issue of material fact, summary judgment for the moving party is appropriate. FED. R. CIV. PROC. 56(c).

### III. **DISCUSSION**

Plaintiffs claim that from June 1, 2003 through August 31, 2004, Glass House failed to pay required contributions to the Funds for CBA work performed by four employees -- Timothy Medved, Ronald Nickles, Bob Pechtold, and Michael Russell. The actual hours worked by the four employees are undisputed. (Plaintiffs are not seeking contributions for employees Adam Rogalny and Mark Salazer, whose hours also were identified in the audit.) Glass House contends that the CBA only requires contributions on behalf of employees who are Union members, Journeyperson Glaziers or Apprentices, and who perform commercial glazing work. Glass House argues that the employees in question are not covered by the CBA because they are not Union members or Journeyperson Glaziers or Apprentices. Additionally, Glass House asserts that Holwell's precontract discussions with Union representatives carved out a contribution exemption for residential work hours.

## A. Residential Worker Exemption

Glass House insists that contributions to the Funds are not required for "residential workers," a phrase first mentioned by Holwell in his deposition and peppered throughout Glass House's summary judgment briefing. (*See* Def. 56.1, ¶ 18). Glass House asserts that extrinsic evidence of the Firm's past auditing practices and precontract conversations between Holwell and Union representatives establish a residential work exemption. However, the CBA's plain language and Seventh Circuit case law undermine any use of extrinsic evidence.

### 1. The CBA

The CBA's language is unambiguous and does not provide a contribution exemption for residential work. If no ambiguity is found in the terms of the CBA, "then, in determining its meaning as a matter of law, we need not review extrinsic evidence suggesting how those terms should be interpreted." *Mazzei v. Rock-N-Around Trucking, Inc.*, 246 F.3d 956, 960 (7th Cir. 2001). Article 6 of the CBA -- "Classification/Scope of Work" -- states that "[i]t is mutually understood and agreed that none but Journeyperson Glaziers or Apprentices will be employed on the following classifications: general glazing, including setting, cutting, preparing. . . ." (CBA, Art. 6). Article 6 continues on for nearly a page and covers an extensive list of glazing work. The list does not specify a residential glazing work exemption. In fact, Article 6 actually

lists glazing work that appears to be characteristically residential: "Door and window frame assemblers such as patio sliding or fixed doors, vented or fixed windows, shower doors, bath tub enclosures. . . ." (*Id.*) No other section of the CBA discusses the character of work covered.

### 2. Past Auditing Practice

Glass House asserts that the auditors acknowledged an exemption for employees working on residential projects because they treated them as employees who were not covered by the CBA and therefore, not included in contribution hours. Glass House's argument is not supported by the record. Article 6 is unambiguous in its exhaustive coverage of what glazing work falls within the CBA. The CBA makes no distinction between residential versus commercial or industrial glazing work with respect to the Funds' contributions.

Likewise, Glass House management never used the label "residential" work to describe its employees' hours to the auditing firm. Contrary to Glass House's argument, the auditors only excluded certain work hours based on Glass House's representation that those hours consisted of "shop" and "administrative" work, as opposed to "installation [or repair] in the field" work. (Holwell Dep. at 32; Richard Wolf Dep. at 24; Daniel Coakley Dep. at 24). Consequently, past auditing practices are immaterial in light of

the unambiguous contract and substantively unsupportive of Glass House's arguments.

### 3. *Oral Extrinsic Evidence*

Glass House also argues that conversations between Holwell and two Union representatives altered the CBA's plain language by omitting residential glazing work from required Funds' contributions. However, federal law and Seventh Circuit precedent dictate otherwise.

ERISA obligates employers to make contributions to a pension fund when contractually bound. 29 U.S.C. § 1145. The Seventh Circuit expands on this, adding that oral understandings between employers and local unions cannot be used to evade pension promises made in collective bargaining agreements. *Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1152-53 (7th Cir. 1989); *see also Central States, S.E. & S.W. Areas Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994). "No matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation to the pension fund, which is not party to local understandings and limitations." *Joe McClelland*, 23 F.3d at 1258.

The CBA's plain language controls here. Oral promises to disregard the CBA's language do not invalidate the actual contractual promise to a pension plan. *See Gerber Truck*, 870 F.2d

at 1153. Article 18 of the CBA -- "Heath and Pension and Annuity Contributions" -- outlines Glass House's obligation to the Funds for glazing work performed within the CBA's trade and geographic jurisdictions. It states that "[c]ontributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification, covered by this Agreement." (CBA, Art. 18 § 3, ¶ 1d).

The CBA is unambiguous in its classification of glazing work and explanation of Glass House's obligation to the Funds. Likewise, Seventh Circuit case law is decisive on the issue of extrinsic evidence. Accordingly, Glass House's extrinsic evidence is immaterial to the dispute.

### B. Employee Coverage Under the CBA

Glass House asserts that the CBA covers employees *only* if they are both (1) "Union members" and (2) "Journeyperson Glaziers or Apprentices." (*See* CBA, arts. 1 & 6). Glass House argues that the four employees in question did not meet these requirements. Conversely, Plaintiff contends that the CBA contribution obligations include all employees who perform work within the proper geographic area, without regard to Union membership or glazier status.

#### 1. Union Membership Requirement

Glass House suggests that the CBA only covers an employee if he is a Union member. If true, this assertion renders the CBA

unenforceable. Federal law curtails the ability of employers to limit their pension fund obligations by hiring non-union employees. 29 U.S.C. § 158(a)(3)("[n]o employer shall justify any discrimination against an employee for nonmembership in a labor organization."). Put a different way, employers such as Glass House have the freedom, if not the obligation, to hire irrespective of Union membership. Nonetheless, the underlying purpose of pension funds is served best when contributions are made based on the hours of collective bargaining work performed, rather than the membership status of the employee. Otherwise, employers could easily shirk their pension fund responsibilities by only hiring nonunion employees.

Contracts are presumptively legal and "should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable." *Walsh v.* Schlecht, 429 U.S. 401, 408 (1977). In *Joe McClelland*, the Seventh Circuit held that private understandings between a coal company and Teamsters union did not override the text of their collective bargaining agreement, especially when the oral agreements invoked an illegal understanding. *Joe McClelland*, 23 F.3d at 1258. The court held that "[e]mployers may not distinguish between members of a bargaining unit who belong to the union and those who do not." *Id.* (citing 28 U.S.C. 158(a)(3)).

In addition to the Seventh Circuit precedent, the CBA is clear in requiring contributions to the Funds for all work performed in the proper trade and geographic jurisdictions, without regard to Union membership. (See CBA, Art. 1 § 1). The CBA must comport with federal and Seventh Circuit law. Accordingly, employee Union membership does not affect Glass House's contribution obligations to the Funds.

### 2. *Journeyperson Glazier and Apprentice Glazier Requirement*

Glass House also cannot rebut the Plaintiffs' claim for arrears by claiming that the four employees are not Journeyperson Glaziers or Apprentices. Similar to the issue of Union membership, the CBA demonstrates an intent that Glass House hire qualified Journeyperson Glaziers or official Apprentices. (CBA, Art. 6 § 1 ("It is mutually understood and agreed that none but Journeyperson Glaziers or Apprentices will be employed on the following [work] classifications.")). However, because federal law forbids discrimination in hiring, the CBA also states that "the Employer has the final right to select the employees to be hired." (*Id.*, Art. I § 2). Despite an employer's hiring flexibility, the Seventh Circuit concludes that pension fund contributions are a non-negotiable aspect of an employer's union membership. *Joe McClelland*, 23 F.3d at 1258.

In *Trustees of the Glaziers Local Union No. 27 Welfare and Pension Funds v. Glass Masters, Ltd*, this Court held:

> An employer may not choose persons to perform
> covered work which has the effect of excluding
> persons covered by the collective bargaining
> agreement and thereby avoiding obligations to
> make contributions. . . . In other words, if
> the CBA provides that Glaziers are to perform
> glazing work, an employer cannot avoid the
> fund obligations by assigning work to non-
> union members or members of another union.

No. 02 C 3503, 2003 WL 1903991, at *1-2 (N.D. Ill. Apr. 17, 2003), aff'd, 99 Fed. Appx. 740 (7th Cir. 2004). The Court held that if an employer sidesteps the collective bargaining agreement's provisions that require it to assign all glazing work to "Journeyperson Glaziers or Apprentices," then the employer may not claim that it is no longer obligated to make contributions to pension funds for those employee hours. Id.

Accordingly, Glass House must contribute to the Funds for the hours of work covered by the CBA irrespective of Journeyperson Glazier or Apprentice Glazier status.

### C. Amount of Contributions Owed to Plaintiffs

The Court requires additional submissions from both parties that specifically calculates the outstanding Funds' contributions for the four employees during the disputed time frame -- June 1, 2003 through August 31, 2004. These calculations should be based on the Firm's third audit report.

### D. Defendant's Motion to Strike O'Donnell Affidavit

In considering the parties' cross motions to strike, the Court disregarded the Michael O'Donnell Affidavit. Plaintiff references

O'Donnell's affidavit in response to Glass House's extrinsic evidence arguments, which evidence is immaterial to resolution of the dispute. Thus, the motion is denied as moot.

### IV. **CONCLUSION**

For the reasons stated herein, Plaintiffs' Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**. The Motion to Strike O'Donnell Affidavit is **DENIED**.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

Dated: August 19, 2005